**CLOW CORPORATION,**
**Plaintiff-Appellant,**

v.

**ROSS TOWNSHIP SCHOOL CORPORATION, Ross Community School Building Corporation, Shannon Plumbing, Inc., Ideal Heating Company, Inc., and Aetna Casualty and Surety Company, Defendants-Appellees.**

No. 3–376A49.

Court of Appeals of Indiana,
Third District.

Jan. 18, 1979.

Patrick J. Galvin of Galvin, Galvin & Leeney, Hammond, for plaintiff-appellant.

Delmar P. Kuchaes, Murphy, McAtee, Murphy & Costanza, East Chicago, for ap-

pellees Ideal Heating Co., Inc., and Aetna Cas. and Sur. Co.

HOFFMAN, Judge.

Appellant Clow Corporation (Clow) brought this suit against Ross Township School Corporation and Ross Community School Building Corporation (the public bodies), Shannon Plumbing, Inc. (Shannon), Ideal Heating Company, Inc. (Ideal) and Aetna Casualty and Surety Company to recover the price of materials furnished for the remodeling of the Merrillville Junior High School. After a trial to the court, Clow recovered a judgment in the amount of $28,224.68, and this appeal followed.

Ideal, a contractor on the school remodeling project, subcontracted a portion of the work to Shannon. Shannon, in turn, engaged Clow to supply materials on its part of the job for the price of $52,000. After becoming insolvent, Shannon left the project in January 1973, leaving its work uncompleted. Ideal completed the work not done by Shannon, continuing to order materials from Clow.

On February 23, 1973, Clow filed its claim with the public bodies, pursuant to IC 1971, 5–16–5–1 and 5–16–5–2 (Burns Code Ed.), claiming that it had not been paid for the materials supplied to Shannon. When it received no payment Clow filed this suit, seeking $52,271.45 in damages, plus interest and attorneys fees.

The court below found that Clow was entitled to payment for materials in the amount of $50,589.77, but found that appellees were entitled to setoffs totalling $22,365.09. It therefore entered judgment for Clow in the amount of $28,224.68.

I.

Clow now appeals from the judgment entered below, claiming that the court erred:

(A) when it determined that the obligation for materials supplied had been discharged in the amount of $11,988.74 as a result of Shannon's payment of a note given on its accounts with Clow;

(B) when it found that a portion of a payment from Ideal to Shannon was traceable into the hands of Clow, thereby further reducing the outstanding obligation by $10,376.35; and

(C) when it refused to award prejudgment interest on the amount of Clow's recovery.

A.

On June 2, 1972, Shannon, and several individuals as guarantors, executed a promissory note in the amount of $135,466.07 payable to Clow in thirty (30) days. The amount of the note represented both full and partial payments for materials supplied by Clow to Shannon on a number of jobs. On that date the total amount owed to Clow by Shannon for all jobs was $347,508, of which $30,734.06 or 8.85% represented charges for materials supplied on the Merrillville Junior High School project. After Clow granted an extension of time for payment, Shannon paid the note on September 16, 1972.

The court below found, pursuant to IC 1971, 26–1–3–802 (Burns Code Ed.), that the acceptance of the note by Clow operated as a *pro tanto* extension of time for payment on all accounts with Shannon. It further found that the payment of the note operated as a *pro tanto* discharge of the underlying obligations, including the Merrillville account. Thus, it found that Clow was charged with receiving a partial payment on the Merrillville account in the amount of $11,988.74 (8.85% of $135,466.07) and held that appellees were entitled to a setoff in that amount.

Clow asserts, however, that its agreement with Shannon at the time the note was taken provided that the Merrillville job was not to be covered by the note. In support of its claim that this alleged agreement requires a different conclusion than that reached by the court, Clow recites the general rule that a debtor may designate to which of several accounts a payment should apply. *See: Hutchison et al. v. Adomatis*

*etc.* (1955), 125 Ind.App. 550, 125 N.E.2d 251; *Western & Southern Indemnity Co. v. Cramer* (1937), 104 Ind.App. 219, 10 N.E.2d 440. The agreement that no part of the note was to cover the Merrillville account, Clow argues, should prevent the court from allocating any part of the payment on the note to that project by applying IC 1971, 26–1–3–802 (Burns Code Ed.). That section provides, in pertinent part, that:

"(1) Unless otherwise agreed where an instrument is taken for an underlying obligation

    *     *     *     *     *     *

   (b) . . . the obligation is suspended pro tanto until the instrument is due . . .. discharge of the underlying obligor on the instrument also discharges him on the obligation."

It is Clow's position that because an agreement existed which determined to which accounts Shannon's note applied, the statute quoted above was inapplicable by its own terms ("unless otherwise agreed . . .").

Had it been established below that the alleged agreement with Shannon existed, Clow's argument might have merit. However, whether or not there was such an agreement was a question of fact. *See: Federal Casualty Co. v. Chatman* (1918), 69 Ind.App. 67, 121 N.E. 296. In this case that question was resolved against Clow by the court, as trier of fact, which found that the note was given by Shannon to cover all outstanding accounts.

Only when the facts are undisputed and lead to one conclusion, one which is contrary to that reached by the trier of fact, will this Court reverse. *Dreibelbis. v. Bennett* (1974), 162 Ind.App. 414, at 419, 319 N.E.2d 634, at 637. For the limited purpose of determining whether sufficient evidence supports the conclusion of the trier of fact, this Court may examine the record. *Duvall et al. v. Carsten-McDougall-Wingett, Inc.* (1973), 156 Ind.App. 553, 297 N.E.2d 861.

At trial, Clow's credit manager, Lyons, testified that Clow's policy was to collect accounts due within 30 to 60 days, with extensions sometimes given to allow payment in 90 to 120 days. Clow's account with Shannon on the Merrillville project, however, had remained unpaid for nearly one year. He further testified that had Shannon refused to sign the note discussed above, Clow would have filed a notice of default with Ideal and the public bodies. Dorman, a bookkeeper employed by Shannon, testified also that Clow's practice was to actively pursue payment on accounts due. He stated that he knew of no account other than the Merrillville job on which Clow had furnished materials to Shannon but had not actively sought payment or security.

From this evidence the trial court could properly conclude that no agreement existed between Shannon and Clow to restrict the application of the note and payment thereon to accounts other than that resulting from the Merrillville project. The evidence does not compel the conclusion that the application of IC 1971, 26–1–3–802, *supra,* was precluded by such an agreement; rather, it would adequately support a finding that the delinquent condition of the Merrillville account was a factor which precipitated Clow's demand that the note be executed. Consequently, the court committed no error in finding as it did.

### B.

██ As a second defense to Clow's claim for the full contract price of materials furnished to Shannon, appellees asserted that they were entitled to a setoff in the amount of $10,376.35. They claimed that a portion of a certain payment by Shannon to Clow, though ostensibly made on another account, was made with funds traceable to a payment made by Ideal to Shannon for work on the Merrillville project. While conceding that the law of this state does not permit such a tracing of funds, *see: Western & Southern Indemnity Co. v. Cramer, supra,* appellees argued that the law of the State of Illinois, which does allow tracing of funds under certain circumstances, should apply to their claim for a setoff. *See: Alexander Lumber Co. v.*

*Aetna Accident & Liability Co.* (1921) 296 Ill. 500, 129 N.E. 871. The trial court agreed that Illinois law applied and found that the appellees were entitled to the setoff claimed.

Clow, in its brief to this Court, argues that the court below erred by applying Illinois law, thereby allowing the setoff claimed by the appellees. It does not, however, claim that the trial court erred by treating the issue of tracing of funds as one of substantive law nor claim that the court incorrectly resolved that issue under Illinois law. Further, Clow neither challenges the method by which the court calculated the setoff nor asserts that the amount itself is excessive. Thus, the only issue before this Court is whether the court below correctly applied the choice of law rule in *W. H. Barber Co. v. Hughes* (1945), 223 Ind. 570, 63 N.E.2d 417, when it decided that Illinois law governed appellees' setoff claim.

In *W. H. Barber Co. v. Hughes, supra,* 63 N.E.2d at 423, the Indiana choice of law rule was stated as follows:

"The court will consider all acts of the parties touching the transaction in relation to the several states involved and will apply as the law governing the transaction the law of that state with which the facts are in most intimate contact."

Under the above-quoted rule, it is the duty of this Court to consider the various aspects of the transaction to determine the state with which it is more closely associated. *W. H. Barber Co. v. Hughes, supra.*

Clow asserts that, since the construction project which is the basis of the controversy is located in Indiana and since Clow's performance of its subcontract with Shannon took place in Indiana, the transaction at issue is in more intimate contact with Indiana than with Illinois. It further maintains that because the fund from which it seeks payment is located in Indiana and exists by virtue of Indiana law (IC 1971, 5–16–5–1—5–16–5–3 (Burns Code Ed.)), the court below erroneously found the transaction more closely connected to Illinois.

The trial court's findings of fact, however, disclose that a sufficient basis existed for the conclusion below that the transaction at issue had more intimate contact with the State of Illinois. The court found:

"34. That all the payments which were made by Ideal Heating Co. to Shannon Plumbing Co., and by Shannon Plumbing Co. to Clow Corporation, were tendered and accepted in the State of Illinois.

"35. That Ideal Heating Co., Inc., Shannon Plumbing Co., Inc., and Clow Corporation are each Illinois corporations organized and existing by virtue of the laws of the State of Illinois.

"36. That all negotiations concerning the contract which existed between IDEAL HEATING CO and SHANNON PLUMBING CO. occurred within the State of Illinois, said contract was executed in the State of Illinois, and Ideal Heating Company's performance by way of payment occurred in the State of Illinois.

"37. That the contract such as existed between Shannon Plumbing Co., Inc. and Clow Corporation arose in the State of Illinois and Shannon Plumbing Company's performance of that contract by payments were agreed to be made in the State of Illinois.

"38. That Hyde Park Bank & Trust Company, in which bank Shannon Plumbing Co. deposited the payments made to it by Ideal Heating Co., and from which bank it paid Clow Corporation on the various debts, is an Illinois bank."

Clow's only argument that these findings were erroneous consists of the single conclusory statement in its brief that, "It should be noted that the findings of fact and conclusions of law which the Court made in its determination to reallocate the $24,000.00 payment of July 7, 1972, were also in error." Such a bald assertion is plainly insufficient to show the above findings to be clearly erroneous. Consequently, this Court cannot disturb these findings on

appeal. Ind. Rules of Procedure, Trial Rule 52(A).

Thus, the above findings, which must be accepted as true, supplied ample support for the court's implicit finding that the specific transaction at issue was the payment from Shannon to Clow. The court's conclusion that the setoff claim should be governed by Illinois law was therefore proper under the rule in *W. H. Barber Co. v. Hughes, supra.*

### C.

As a third ground for reversal, Clow argues that the court below erred when it refused to award prejudgment interest on the amount recovered, on the ground that appellees unreasonably delayed payment of the amount due.

Clow has failed to cite any authority in support of its claim that it is entitled to such an award in this case. Although such a failure may operate as a waiver of any claimed error, Ind. Rules of Procedure, Appellate Rule 8.3(A)(7), Clow's argument is easily disposed of on the merits and will therefore be addressed herein.

The question of whether there has been an unreasonable delay in payment so as to justify an award of interest is one of fact. *Remington v. Edwards* (1923), 79 Ind.App. 501, 138 N.E. 824; *Independent, etc., Stores v. Earles* (1914), 57 Ind.App. 241, 106 N.E. 730. This Court cannot weigh the evidence on such questions; rather, it must consider only the evidence most favorable to the appellee. *Chaney v. Tingley* (1977), Ind. App., 366 N.E.2d 707.

The court below found that Clow had, by misapplying payments made to it, attempted to obtain an unconscionable advantage over the appellees with respect to the funds withheld on the Merrillville project. Certainly this evidence cannot be said to lead unerringly to the conclusion that appellees unreasonably refused to make further payments to Clow. Consequently, we must uphold the court's action in refusing to award interest. *Chaney v. Tingley, supra; Utica Mut. Ins. Co. v. Ueding* (1977), Ind.App., 370 N.E.2d 373.

### II.

Appellees Ideal Heating Company, Inc. and Aetna Casualty and Surety Company have presented the following issues for review in their cross-appeal:

(A) whether the court below erred by allowing Clow to recover an amount exceeding the contract price for materials supplied on the Merrillville project; and

(B) whether the court erred when it held that the entire amount of funds withheld by the public bodies was subject to Clow's claim.

### A.

By the terms of the contract between Clow and Shannon, Clow was to deliver certain materials to the job site for the price of $52,000. The trial court found that Clow had actually furnished materials of the value of $50,589.77 prior to the time when Shannon left its part of the project uncompleted. It further found that when Ideal took over to furnish the work not completed by Shannon, Clow furnished the remaining materials for a price (paid by Ideal) of $5,080.45.

Appellees now argue that Clow is entitled to recover only the contract price ($52,000) less the amount paid ($5,080.45) or a total of $46,920.55. They maintain that the setoffs previously discussed should be deducted from that amount in order to determine the proper amount of the judgment. Their reasoning is that Clow should not be entitled to receive an amount in excess of the agreed contract price for the materials.

In essence, appellees would have this Court determine that Ideal was entitled to purchase materials from Clow under the terms of a contract between Shannon and Clow. Yet they have directed this Court to no part of the record which would support such a proposition. The error, if any, in reaching a conclusion contrary to that urged by appellees is therefore waived. Ind. Rules of Procedure, Appellate Rule 8.3(A)(7).

### B.

The court below found that the public bodies had withheld from payments to Ideal the amount of $133,479 during the course of the Merrillville project. Since that amount was sufficient to satisfy all claims made against the retained fund, the court concluded that the fund was subject to attachment by Clow to the extent of the full amount of the judgment.

Appellees argue that the above conclusion was erroneous because Clow was only entitled to payment from the fund to the extent that the fund represented amounts due from Ideal to Shannon, i. e., a pro-rata share of the retained funds.

As this Court has previously held, the intent of IC 1971, 5–16–5–1 (Burns Code Ed.) is to provide a fund from which "all bills due and owing" to subcontractors and materialmen shall be paid. *Ideal Heating Co., Inc. v. Falls & Noonan, Inc.* (1978), Ind.App., 378 N.E.2d 946. That statute provides that properly filed claims shall be paid in full except where " . . . there is not a sufficient sum owing to such contractor on such contract to pay all such bills, then the sum owing on such contract shall be prorated in payment of all such bills among the parties entitled thereto . . .." The appellees concede that the fund from the Merrillville project was sufficient to pay all bills; consequently, the court properly allowed Clow's judgment, to be satisfied therefrom.

For all the foregoing reasons, the judgment below is in every respect affirmed.

Affirmed.

GARRARD, P. J., and STATON, J., concur.